UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GURU KRIPA FOODS, INC.,                          :
                                                 :
                    Plaintiff,                   :
                                                 :          **OPINION AND ORDER**
              -against-                           :          10-CV-0229 (DLI) (SMG)
                                                 :
INTER, INC. and MIDWEST COAST                    :
LOGISTICS, LLC and DEVAN PATEL,                  :
                                                 :
                    Defendants.                  :
_____          :
MIDWEST COAST LOGISTICS, LLC,                    :
                                                 :
                    Third-Party Plaintiff,       :
                                                 :
              -against-                           :
                                                 :
DEVAN PATEL and NEIL PATEL,                      :
                                                 :
                    Third-party Defendants.      :
_____          :
INTER INC.,                                      :
                                                 :
                    Second Third-Party Plaintiff,:
                                                 :
              -against-                           :
                                                 :
DEVAN PATEL and NEIL PATEL,                      :
                                                 :
                    Second Third-Party Defendants. :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On November 24, 2009, Plaintiff Guru Kripa Foods, Inc. ("Plaintiff") commenced this

action against Inter, Inc. ("Inter") by filing a summons and complaint in New York State

Supreme Court, Queens County.  On January 20, 2010, Inter properly removed the action to this

court pursuant to 28 U.S.C. §§ 1332 and 1441(a).  (*See* Notice of Removal, Doc. Entry No. 1.)

On May 11, 2011, by way of an amended complaint, Plaintiff also commenced this action

against Midwest Coast Logistics, LLC ("MCL," together with Inter, "Responding Defendants") and Devan Patel ("Patel"), [1] claiming, as to Responding Defendants, that they breached the terms of certain bills of lading[2] covering sixteen (16) truckloads of basmati rice that Plaintiff shipped interstate allegedly for sale to Whole Foods Market, Inc. ("Whole Foods") and Trader Joe's Company ("Trader Joe's"). (*See* Second Am. Verified Compl. ("Compl."), Doc. Entry No. 58.)

In its answer to Plaintiff's complaint, Inter asserted cross-claims against MCL seeking, *inter alia*, indemnification from MCL, if Inter is found liable to Plaintiff. (*See* Doc. Entry No. 61.) Responding Defendants also filed separate third-party complaints against Patel and his brother Neil Patel.[3] (Doc. Entry Nos. 54, 56.) Responding Defendants now make separate motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") against Plaintiff. (Doc. Entry Nos. 82, 91.) Plaintiff opposes Responding Defendants' motions and cross-moves for summary judgment pursuant to Rule 56, "striking the answers" of Responding Defendants. (*See* Pl.'s Cross Mot. to Strike Answers of the Defendants ("Pl.'s Mot."), Doc. Entry No. 79.) For the reasons set forth below, Responding Defendants' motions are granted and Plaintiff's motion is denied.[4]

---

[1] Patel has not appeared in this action.

[2] A bill of lading is a contract between a shipper and a carrier that sets forth the carrier's obligations for delivering certain goods. *See GSI Group, Inc. v. Zim Integrated Shipping Services, Ltd.*, 562 F. Supp. 2d 503, 506 (S.D.N.Y. 2008) (citation omitted).

[3] On June 13, 2011 and June 29, 2011, respectively, MCL moved for entry of default against Neil Patel and Devan Patel. (Doc. Entry Nos. 67, 71.) On June 24, 2011, and July 26, 2011, respectively, the Clerk of the Court entered MCL's notations of default against Neil and Devan Patel. (Doc. Entry Nos. 70, 74.) On September 8, 2011, Inter moved for entry of default against Devan Patel and Neil Patel and on September 9, 2011, the Clerk of the Court entered Inter's notations of default. (Doc. Entry Nos. 77, 78.)

[4] MCL also moved for summary judgment against the cross-claims filed by Inter. As Responding Defendants' motions are granted as to Plaintiff's complaint, Inter's cross-claims

## BACKGROUND

### I.   The Parties' Local Civil Rule 56.1 Statements

As a threshold matter, while all parties in this case made submissions purporting to comply with Local Civil Rule 56.1, Plaintiff's submission in response to Responding Defendants' Joint Statement of Material Facts is wholly deficient. [5]  (*See* Pl.'s Stmt. of Material Facts ("Pl.'s 56.1 Stmt."); [6] Defs.' Joint Stmt. of Material Facts ("Defs.' 56.1 Stmt."), annexed to MCL's Mot. for Summ. J., Doc. Entry No. 82; Pl.'s Stmt. of Material Facts ("Pl.'s 56.1(b) Stmt."), Doc. Entry Nos. 81, 83; MCL's Counterstatement of Facts in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("MCL's 56.1(b) Stmt."), Doc. Entry No. 88; Inter's Resp. to Pl.'s Stmt. of Material Facts ("Inter's 56.1(b) Stmt."), Doc. Entry No. 89.)

Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."   Local Civ. R. 56.1(a).  Moreover, the party opposing the motion must "include a correspondingly numbered paragraph responding

---

against MCL are moot.  Consequently, MCL's summary judgment motion against Inter also is denied as moot and need not be addressed herein.

[5]  Plaintiff's counsel has filed two virtually identical versions of Plaintiff's Rule 56.1(b) statement.  The version filed under Doc. Entry No. 81 is dated September 26, 2011 while the version filed under Doc. Entry No. 83 is dated August 26, 2011.  Plaintiff's counsel only provided the court with a hard copy of the Rule 56.1(b) statement dated September 26, 2011.  Nonetheless, out of an abundance of caution, the court has reviewed both versions of the 56.1(b) statement.  There is a slight variation in responses in the two versions.  However, neither version is remotely compliant with Local Civil Rule 56.1.  To the extent the court cites to Plaintiff's 56.1(b) statement, it will cite to the version with the more recent date.

[6]  Plaintiff's counsel did not file an electronic version of Plaintiff's 56.1(a) statement on the court's Electronic Case Filing ("ECF") system, as is required by Rule I.A. of this court's Individual Motion Practice and Rules.

to each numbered paragraph in the statement of the moving party . . ." LOCAL CIV. R. 56.1(b).
In addition, "[e]ach statement by the movant or opponent . . . *including each statement
controverting any statement of material fact*, must be followed by citation to evidence which
would be admissible, set forth as required by FED. R. CIV. P. 56(c)." LOCAL CIV. R. 56.1(d)
(emphasis added). Finally, the facts submitted in the movant's statement "will be deemed to be
admitted for purposes of the motion unless specifically controverted by" the opposing party's
statement. LOCAL CIV. R. 56.1(c); *see also* FED. R. CIV. P. 56(e)(2) ("If a party fails to properly
support an assertion of fact or fails to properly address another party's assertion of fact as
required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the
motion[.]); *Paolercio v. Allstate Ins. Co.*, 2011 WL 4628748, at *1 (E.D.N.Y. Sept. 30, 2011)
(citations omitted) (A party's failure to contest facts set forth in the opposing party's Rule 56.1
statement "constitutes an admission of those facts, and those facts are accepted as being
undisputed.").

Each purportedly undisputed fact set forth in Responding Defendants' Joint Statement of
Material Facts is amply supported by multiple citations to the record. (*See* Defs.' 56.1 Stmt.)
Plaintiff attempts to place a substantial portion of Responding Defendants' Joint Statement of
Material Facts in controversy; however, Plaintiff's entire Rule 56.1(b) statement is conclusory,
fails to address Responding Defendants' record-based assertions, and is entirely devoid of
citations to the record. (*See* Pl.'s 56.1(b) Stmt.) Accordingly, for purposes of the instant motion,
Responding Defendants' factual assertions that are supported by the record and not controverted
by Plaintiff in accordance with Rule 56 and Local Civil Rule 56.1 are deemed admitted. *See
Vinson v. City of New York*, 2007 WL 965338, at *2 (S.D.N.Y. Mar. 30, 2007) (deeming facts
supported by the record and uncontroverted by plaintiff admitted for purposes of Rule 56

motion); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 68 (E.D.N.Y. 2002) ("Where plaintiff has not responded to defendants' factual assertions—all of which are established by documentary evidence and/or the deposition testimony of plaintiff or her counsel—this Court has deemed those facts to be uncontroverted.").  In light of the foregoing discussion, the following facts are undisputed.

## II.    Undisputed Facts

### A.  The Parties

Plaintiff is a food importation and distribution company organized in 2004 and located in Maspeth, Queens County, New York.  (Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1(b) Stmt. ¶ 1; Nov. 4, 2010 Dep. of Vijay Kumar Arora ("Arora Dep.") at 10, annexed as Ex. A to Jeff Gillespie Aff. ("Gillespie Aff."), Doc. Entry No. 82.)  Plaintiff's principal is Vijay Kumar Arora ("Arora"), who operated a rice distribution business in India before moving to the United States in 2001. (Defs.' 56.1 Stmt. ¶¶ 2-3; Pl.'s 56.1(b) Stmt. ¶¶ 2-3; Arora Dep. at 8-9, 12.)  Between 2004 and 2009, Plaintiff sold rice locally to customers in New York and New Jersey and Plaintiff transported the rice in its own van from its Queens warehouse to the local purchasers.  (Defs.' 56.1 Stmt. ¶ 4; Pl.'s 56.1(b) Stmt. ¶ 4; Arora Dep. at 23-24.)  Prior to February 2009, Plaintiff had never conducted business with a food broker.  (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1(b) Stmt. ¶ 6; Arora Dep. at 49.)  Prior to April 2009, Plaintiff had never conducted business with Whole Foods or Trader Joe's.  (Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1(b) Stmt. ¶5; Arora Dep. at 30-31.)

MCL is a property broker licensed by the Federal Motor Carrier Safety Administration ("FMCSA") and is located in Sioux Falls, South Dakota.  (Defs.' 56.1 Stmt. ¶ 35; Pl.'s 56.1(b) Stmt. ¶ 35; Gillespie Aff. ¶ 4.)  As an FMCSA-licensed property broker, MCL procures and arranges for transportation services by motor carriers at the request of MCL's customers;

however, MCL does not directly handle or transport goods itself.  (Defs.' 56.1 Stmt. ¶¶ 36-37;
Pl.'s 56.1(b) Stmt. ¶¶ 36-37; Gillespie Aff. ¶ 5; Dep. of Dan King ("King Dep.") at 3, annexed as
Ex. E to Gillespie Aff.)

Inter is an interstate motor carrier licensed by the FMCSA and located in Addison,
Illinois.  (Defs.' 56.1 Stmt. ¶ 67; Pl.'s 56.1(b) Stmt. ¶ 67; Decl. of Danny Petrovic ("Petrovic
Decl.") ¶ 2, Doc. Entry No. 92; Dep. of Zorica Petrovic ("Petrovic Dep.") at 6, annexed as Ex. C
to Gillespie Aff.)

### B.  Food Broker Transaction

In February 2009, Arora received a phone call from an individual named Devan Patel
during which Patel identified himself as a food broker from Chicago who was interested in
purchasing rice from Plaintiff.  (Defs.' 56.1 Stmt. ¶ 8; Pl.'s 56.1(b) Stmt. ¶ 8; Arora Dep. at 51.)
Between February and June of 2009, Arora engaged in a series of additional telephone
conversations with Patel and another individual who identified himself as Anthony Smith
("Smith").  (Defs.' 56.1 Stmt. ¶ 9; Pl.'s 56.1(b) Stmt. ¶ 9; Arora Dep. at 30-33.)  Smith told
Arora that he and Patel were both food brokers for Whole Foods and Trader Joe's, which Arora
believed to be true.  (Defs.' 56.1 Stmt. ¶¶ 10, 11; Pl.'s 56.1(b) Stmt. ¶¶ 10, 11; Arora Dep. at 45,
61-62.)

As a result of the conversations Arora had with Patel and Smith, Plaintiff purchased and
imported the sixteen (16) rice shipments identified in the complaint[7] from a seller named SRSS
Agro Pvt., Ltd., located in Delhi, India, which he believed would be purchased by Whole Foods
and Trader Joe's from Plaintiff. (Compl. ¶¶ 2-67; Defs.' 56.1 Stmt. ¶¶ 7, 10; Pl.'s 56.1(b) Stmt.
¶¶ 7, 10; Pl.'s 56.1 Stmt. ¶ 1; Arora Dep. at 19.)

---

[7] Complaint refers to the Second Amended Verified Complaint, filed May 11, 2011.  (*See* Doc.
Entry No. 58.)

Plaintiff did not enter into any written agreements with Patel or Smith regarding the rice purchases, and all of Arora's communications with them were conducted by telephone.  (Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1(b) Stmt. ¶ 14; Arora Dep. at 49-50.)  Moreover, Patel never provided Plaintiff with any purchase orders from Whole Foods or Trader Joe's and Plaintiff never requested any purchase orders from Patel for the rice shipments.  (Defs.' 56.1 Stmt. ¶ 24; Pl.'s 56.1(b) Stmt. ¶ 24; Arora Dep. at 141-43.)  In addition, Plaintiff never sent Patel or Smith any invoices covering Plaintiff's intended sales of the rice shipments to Whole Foods and Trader Joe's because Patel and Smith "never demanded" such invoices from Plaintiff.  (Defs.' 56.1 Stmt. ¶ 25; Arora Dep. at 86.)  Although Arora had never heard of or communicated with Patel prior to receiving the initial phone call from him in February 2009, Arora neither investigated Patel nor requested or obtained any personal references from him before or during the execution of the rice shipments.  (Defs.' 56.1 Stmt. ¶ 15; Pl.'s 56.1(b) Stmt. ¶ 15; Arora Dep. at 54-55.)

Arora believed that Patel and Smith would share commissions on Plaintiff's expected rice sales to Whole Foods and Trader Joe's.  (Defs.' 56.1 Stmt. ¶ 12; Pl.'s 56.1(b) Stmt. ¶ 12; Arora Dep. at 45.)  Smith had informed Arora that Whole Foods and Trader Joe's would send their own trucks to pick up the rice shipments from Plaintiff.  (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1(b) Stmt. ¶ 13; Arora Dep. at 45, 48.)  It also was Arora's understanding that Smith and Patel would control the rice shipments once they were loaded into the trucks at Plaintiff's Queens warehouse.  (Defs.' 56.1 Stmt. ¶ 16; Arora Dep. at 167.)  Moreover, Arora testified that he understood, from the beginning of Plaintiff's relationship with Patel and Smith, that Plaintiff would not know the delivery address or final destination of the rice shipments.  (Defs.' 56.1 Stmt. ¶ 29; Arora Dep. at 148.)  It was Plaintiff's understanding that the rice shipments could possibly be delivered to

different destinations than those Plaintiff placed on its invoices[8] because Plaintiff believed that Whole Foods and Trader Joe's told the trucking company where to send the rice and that the rice could have been sent to any of four-hundred different Whole Foods stores alone.  (Defs.' 56.1 Stmt. ¶ 88; Arora Dep. at 147-148, 173).  Arora expected that Patel or Smith would eventually advise him of the shipments' final destinations.  (Defs.' 56.1 Stmt. ¶ 30; Arora Dep. at 173.)

Plaintiff had no role in arranging for the transportation of the subject shipments.  (Defs.' 56.1 Stmt. ¶ 21; Pl.'s 56.1(b) Stmt. ¶ 21; Arora Dep. at 136.)  Based on Arora's conversations with Patel, Smith, and MCL representative Dan King ("King"), Arora believed that: 1) MCL would make the transportation arrangements for the subject shipments on behalf of Whole Foods and Trader Joe's; 2) Inter's trucking services would be used to transport some of the subject shipments; and 3) Whole Foods and Trader Joe's having hired MCL and Inter would pay them. (Defs.' 56.1 Stmt. ¶¶ 18-20; Pl.'s 56.1(b) Stmt. ¶¶ 18-20; Arora Dep. at 48-49, 72-73, 136-37.)

### C.  MCL's Property Broker Transaction

In early April 2009, MCL representative King received a phone call from Bob Patel, one of MCL's sub-contractor truck fleet operators in the Chicago, Illinois area, who advised King that an individual named Devan Patel was seeking trucking services for a series of rice shipments that were to be picked up from Plaintiff in New York.  (Defs.' 56.1 Stmt. ¶¶ 38, 39; Pl.'s 56.1(b) Stmt. ¶¶ 38, 39; King Dep. at 6-7.)  King testified that he does not know whether Bob Patel is related to Devan Patel.  (King Dep. at 6.)  On April 14, 2009, Bob Patel sent a one-page handwritten fax to MCL, addressed to King, summarizing Devan Patel's transportation and delivery instructions to MCL for the rice shipments.  (Defs.' 56.1 Stmt. ¶ 40; Pl.'s 56.1(b) Stmt.

---

[8] While Plaintiff never sent Patel or Smith any invoices covering the rice shipments, Plaintiff did create invoices that it purportedly unsuccessfully remitted to Whole Foods and Trader Joe's. (Defs.' 56.1 Stmt. ¶ 25; Arora Dep. at 86; Pl.'s 56.1 Stmt. ¶ 16; Ex. T ("Pl.'s Invoices"), annexed to Vijay Arora Aff. ("Arrora Aff."), Doc. Entry No. 79.)

¶ 40; Pl.'s 56.1 Stmt. ¶ 5; King Dep. at 18; Ex. H (the "Fax"), annexed to Gillespie Aff.)  Devan

Patel's instructions requested the goods be transported on a "blind shipment" basis from New

York to a facility in Elk Grove Village, Illinois.  (Defs.' 56.1 Stmt. ¶ 41; Pl.'s 56.1(b) Stmt. ¶ 41;

King Dep. at 18; Ex. H.)  Specifically, the Fax stated, in pertinent part:

- BLIND SHIPMENT -

* * *

> <u>Ship to</u>: Whole Foods, Inc 550 Bowie Austin TX 78703
> <u>Actual</u> shipment going to Elk Grove Village, IL
> Address to be given after pickup

* * *

> Shipper should not know that shipment is going to Elk Grove Village, IL
> Driver should only say load going to Austin TX for Whole Foods

(Pl.'s 56.1 Stmt. ¶ 6; MCL's 56.1(b) Stmt. ¶ 6; Inter's 56.1(b) Stmt. ¶ 6; Ex. H.)

A blind shipment is one in which the shipment's place of origin and/or place of delivery

is not disclosed by the carrier to the consignor or consignee.  (Defs.' 56.1 Stmt. ¶ 42; Pl.'s

56.1(b) Stmt. ¶ 42; Petrovic Dep. at 21, 24; King Dep. at 19; Petrovic Decl. ¶ 12.)  Blind

shipment is defined by the United States Department of Transportation ("US DOT"), Maritime

Administration, as, "A B/L [bill of lading] wherein the paying customer has contracted with the

carrier that shipper or consignee information is not given."  (Defs.' 56.1 Stmt. ¶ 43 (citing US

DOT, Maritime Administration, Glossary of Shipping Terms, 19 (2008),

http://www.marad.dot.gov/documents/Glossary_final.pdf.); Pl.'s 56.1(b) Stmt. ¶ 43.)  Blind

shipments are a common practice in the trucking industry.  (Defs.' 56.1 Stmt. ¶ 44; Petrovic Dep.

at 69; Petrovic Decl. ¶¶ 15-17.)  Devan Patel's transportation and delivery instructions also

requested MCL to send its invoices for the transportation freight charges to Devan Patel at his

address in Skokie, Illinois.  (Defs.' 56.1 Stmt. ¶ 45; Pl.'s 56.1(b) Stmt. ¶ 45; Ex. H.)

9

Sometime in April 2009, after Devan Patel's handwritten instructions were faxed to MCL, King and Patel engaged in a series of phone calls wherein MCL accepted shipping orders from Patel and MCL, in turn, sub-contracted with Inter to provide the transportation of some of the subject rice shipments from plaintiff's Queens warehouse to a warehouse designated by Patel in Elk Grove Village, Illinois.  (Defs.' 56.1 Stmt. ¶ 46; Pl.'s 56.1(b) Stmt. ¶ 46; King Dep. at 11-12.)  In the telephone calls between King and Patel, Patel requested MCL to have Inter's truck drivers tell Plaintiff that they were picking up the shipments for Whole Foods or Trader Joe's.  (Defs.' 56.1 Stmt. ¶ 48; Pl.'s 56.1(b) Stmt. ¶ 48; King Dep. at 11-12.)  King believed Patel's instructions were meant to help the truck drivers identify the correct shipments to Plaintiff for pick-up from Plaintiff's facility.  (Defs.' 56.1 Stmt. ¶ 49; King Dep. at 39-40.)  From his discussions with Devan Patel, King understood that MCL was required to arrange for the transportation of the shipments from New York to the Chicago area, as a relay point, and that Patel would take over the shipments once they arrived in Illinois.  (Defs.' 56.1 Stmt. ¶ 50; King Dep. at 12, 75-76.)

King discussed Patel's delivery instructions with MCL's Director of Logistics, John Krolikowski ("Krolikowski"), and together they concluded that Patel likely requested that the goods be transported as a blind shipment to protect Patel's own sales by not disclosing his buyers to Plaintiff.  (Defs.' 56.1 Stmt. ¶¶ 51, 52; Pl.'s 56.1(b) Stmt. ¶ 51; King Dep. at 4, 19, 32-33.)  Moreover, King was not concerned by Patel's request for blind shipments because he previously had received similar requests from other MCL customers.  (Defs.' 56.1 Stmt. ¶ 53; Pl.'s 56.1(b) Stmt. ¶ 53; King Dep. at 33.)  MCL forwarded its freight charge invoices for each of the shipments to Patel at his Skokie, Illinois address and all of MCL's invoices to Patel were paid.  (Defs.' 56.1 Stmt. ¶ 55; Pl.'s 56.1(b) Stmt. ¶ 55; King Dep. at 25; Ex. J, annexed to Gillespie

Aff.)

   *D. Inter's Transportation of the Rice Shipments*

   Commencing on or about April 14, 2009 until on or about June 17, 2009, MCL faxed a series of Load/Rate Confirmation sheets ("Rate Sheet" or "Rate Sheets") to Inter regarding the rice shipments.  It was MCL's and Inter's regular practice for MCL to fax Rate Sheets to Inter and for Inter to follow the instructions on the Rate Sheets for any loads accepted by Inter from MCL.  (Defs.' 56.1 Stmt. ¶¶ 72, 73; Pl.'s 56.1(b) Stmt. ¶¶ 72, 73; Petrovic Dep. at 31, 42; King Dep. at 34; Petrovic Decl. ¶ 23; Rate Sheet, annexed as Ex. I to Gillespie Aff.)  Each of the Rate Sheets faxed by MCL to Inter covering the subject shipments contains a clause reciting: "This Load/Rate Confirmation sheet is an Addendum to the Broker/ Carrier Agreement between Midwest Coast Logistics, LLC, and Inter, Inc."  (Defs.' 56.1 Stmt. ¶ 74; Pl.'s 56.1(b) Stmt. ¶ 74; Rate Sheet, Ex. I.)

   Pursuant to Patel's instructions to MCL, the April 14, 2009 Rate Sheet faxed to Inter also contain directions stating:  "Blind will give address in Elk Grove Village IL when driver calls us loaded.  Must tell shipper goes to Whole Foods in Austin TX."  (Rate Sheet, Ex. I; Pl.'s 56.1 Stmt. ¶ 7; MCL's 56.1(b) Stmt. ¶ 7; Inter's 56.1(b) Stmt. ¶ 7; Defs.' 56.1 Stmt. ¶ 77; Pl.'s 56.1(b) Stmt. 77; King Dep. at 81.)   The Rate Sheet was then signed by an authorized representative for Inter.  (Pl.'s 56.1 Stmt. ¶ 8; MCL's 56.1(b) Stmt. ¶ 8; Inter's 56.1(b) Stmt. ¶ 8.)   MCL expected, and so instructed Inter, that the shipments were to be delivered blind, meaning that the shipper at the pick-up location, in this case Plaintiff, would not be advised of the actual destination.  (Defs.' 56.1 Stmt. ¶ 78; Pl.'s 56.1(b) Stmt. ¶ 78; King Dep. at 36; Petrovic Decl. ¶ 28.)  Accordingly, because the shipments were blind, Inter was not informed of the actual delivery address until after it had received the goods and called MCL for further

instructions.  (Defs.' 56.1 Stmt. ¶ 79; King Dep. at 36; Petrovic Decl. ¶ 29.)  Furthermore, because the shipments were blind, Inter directed Plaintiff to contact MCL if Plaintiff required any additional information and Inter provided Plaintiff with MCL's contact information.  (Defs.' 56.1 Stmt. ¶ 85; Petrovic Dep. at 35-36; Petrovic Decl. ¶ 30.)

MCL never transported or maintained physical possession of any of the rice shipments but arranged for Inter's trucks to go to Plaintiff's warehouse to pick up the rice shipments; the first shipment was picked up by Inter on or about April 14, 2009 and the last shipment was picked up on or about June 17, 2009.  (Defs.' 56.1 Stmt. ¶¶ 22, 23, 47, 75; Pl.'s 56.1(b) Stmt. ¶¶ 22, 23, 47, 75; King Dep. at 9; Arora Dep at 68-70; Gillespie Aff. ¶ 11.)  Plaintiff prepared the bills of lading covering the sixteen (16) rice shipments and gave copies to the truck drivers, which the drivers signed.  (Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1(b) Stmt. ¶ 27; Arora Dep at 89-90; Dep. of Rohit Satia ("Satia Dep.") at 79-81, annexed as Ex. B to Gillespie Aff.)  Arora also testified that Plaintiff mailed copied of its bills of lading to Smith in Austin, Texas. (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1(b) Stmt. ¶ 28; Arora Dep. at 90-92.)  King at MCL did not receive copies of the Bills of Lading issued by Plaintiff.  (Defs.' 56.1 Stmt. ¶ 54; Pl.'s 56.1(b) Stmt. ¶ 54; Arora Dep. at 37.)

Pursuant to Patel's instructions, MCL directed Inter to deliver the subject shipments to the Elk Grove Village warehouse designated by Patel, which is a cross-dock facility where shipments are eventually reloaded onto other trucks for delivery to an end user.  (Defs.' 56.1 Stmt. ¶¶ 76, 89; Pl.'s 56.1(b) Stmt. ¶¶ 76, 89; Petrovic Dep. at 80; King Dep. at 12, 46, 75-76.) All of Inter's freight charge invoices were remitted to MCL for the subject shipments that it was assigned and accepted, and those invoices were paid by MCL.  (Defs.' 56.1 Stmt. ¶ 81; Pl.'s 56.1(b) Stmt. ¶ 81; Pl.'s 56.1 Stmt. ¶ 10; MCL's 56.1(b) Stmt. ¶ 10; Inter's 56.1(b) Stmt. ¶ 10;

Petrovic Dep. at 16, 48.)  Moreover, Inter did not communicate with MCL's customer, Patel, or with Smith regarding the subject shipments.  (Defs.' 56.1 Stmt. ¶ 82; Pl.'s 56.1(b) Stmt. ¶ 82; Petrovic Dep. at 52; Petrovic Decl. ¶ 33.)

### E.  *Plaintiff's Relationship with Responding Defendants*

Plaintiff neither hired nor paid MCL or Inter for their services with respect to the rice shipments.  (Defs.' 56.1 Stmt. ¶ 56; Arora Dep. at 139-140, 160-61; Gillespie Aff. ¶ 12; Petrovic Dep. at 16, 48, 71; King Dep. at 25, 68.)  Rather, MCL was hired, instructed, and paid by Patel and MCL, in turn, hired, instructed and paid Inter to transport the rice shipments from New York to Illinois in accordance with Patel's instructions to MCL.  (Defs.' 56.1 Stmt. ¶ 57; Pl.'s 56.1(b) Stmt. ¶ 57; Pl.'s 56.1 Stmt. ¶ 4; Gillespie Aff. ¶ 13.)  Moreover, Plaintiff did not receive any documents from MCL relating to the shipments and Plaintiff did not transmit any documents to MCL.  (Defs.' 56.1 Stmt. ¶ 58; Pl.'s 56.1(b) Stmt. ¶ 58; Arora Dep. at 160.)

Before the first rice shipment was sent in mid-April, 2009, MCL contacted Plaintiff and advised Arora that MCL would be arranging the shipments for Patel and Smith.  (Defs.' 56.1 Stmt. ¶ 59; Arora Dep. at 48-49.)  When Arora asked MCL about the ultimate destination of a shipment, MCL advised Arora to contact Patel for that information.  (Defs.' 56.1 Stmt. ¶ 60; King Dep. at 12.)  MCL did not inform Arora for whom MCL worked and Arora did not ask MCL about MCL's customer.  (Defs.' 56.1 Stmt. ¶ 61; Arora Dep. at 48.)  Arora testified that he did not ask MCL whether MCL was working for Trader Joe's or Whole Foods because Arora was not concerned or worried about whom MCL was working for; moreover, Arora testified that "it never occurred in my mind" to think about MCL's role in the shipments.  (Defs.' 56.1 Stmt. ¶¶ 62, 63; Arora Dep. at 65, 162-163.)  However, Smith told Arora "several times" that MCL was working for Smith.  (Defs.' 56.1 Stmt. ¶ 64; Arora Dep. at 72.)  Arora assumed that Inter

13

was Trader Joe's and Whole Foods' trucking company.  (Defs.' 56.1 Stmt. ¶ 65; Pl.'s 56.1(b) Stmt. ¶ 65; Arora Dep. at 73.)

       *F.  End Users*

At the time the last shipment was sent on June 17, 2009, Plaintiff had not received any payment from Whole Foods or Trader Joe's for any of the shipments.  (Defs.' 56.1 Stmt. ¶ 31; Pl.'s 56.1(b) Stmt. ¶ 31; Arora Dep. at 38.)   After the last shipment was released, Arora contacted Whole foods and Trader Joe's regarding payment and both companies denied placing any order for the rice shipments.  (Defs.' 56.1 Stmt. ¶ 31; Pl.'s 56.1(b) Stmt. ¶ 31; Arora Dep. at 39-44.)  Arora now believes that he was deceived by Patel and Smith.  (Defs.' 56.1 Stmt. ¶ 33; Pl.'s 56.1(b) Stmt. ¶ 33; Arora Dep. at 141-44.)

The shipments are no longer at the warehouse in Elk Grove Village, Illinois.  (Defs.' 56.1 Stmt. ¶ 90; Pl.'s 56.1(b) Stmt. ¶ 90; Petrovic Decl. ¶ 39.)  Neither Inter nor MCL know where the shipments went after they were delivered to the warehouse in Elk Grove Village, Illinois – including whether or not they were ultimately delivered to Whole Foods or Trader Joe's, or later resold on behalf of Whole Foods or Trader Joe's.  (Defs.' 56.1 Stmt. ¶¶ 91, 94; Pl.'s 56.1(b) Stmt. ¶¶ 91, 94; King Dep. at 45-46; Petrovic Dep. at 55; Petrovic Decl. ¶ 40.)  Eventually, the Federal Bureau of Investigation ("FBI") conducted an investigation to search for the missing rice shipments.  (Pl.'s 56.1 Stmt. ¶ 18; MCL's 56.1(b) Stmt. ¶ 18; Inter's 56.1(b) Stmt. ¶ 18; Ex. U, annexed to Vijay Arora Aff. ("Arrora Aff."), Doc. Entry No. 79.)  Sometime after the FBI investigation commenced, Plaintiff filed the instant suit contending it incurred an obligation to its wholesaler, SRSS Agro Pvt., Ltd, in the amount of $392,108.48 for the loss of the goods shipped by Inter at the direction of MCL.  (*See* Compl.; Pl.'s 56.1 Stmt. ¶ 17.)

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

### II.   Basis of the Parties' Summary Judgment Motions

The gravamen of Inter's summary judgment motion is that the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706 ("the Carmack Amendment") preempts Plaintiff's sixteen state or common law breach of contract claims, and, as a result, Plaintiff's

15

complaint should be dismissed in its entirety.  Inter additionally argues that, even under the Carmack Amendment, Plaintiff has failed to establish a *prima facie* case and, consequently, the complaint should be dismissed on this alternative ground. (*See* Inter's Mem. of Law in Supp. of Mot. for Summ. J. ("Inter's Mem."), Doc. Entry No. 93.)

The basis of MCL's summary judgment motion is that Section 14501(c)(1) of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.* ("ICCTA") preempts all state or common law claims against MCL, other than breach of contract claims, and, because MCL is not in privity of contract with Plaintiff, the sixteen breach of contract claims against MCL should be dismissed.  (*See* MCL's Mem. of Law in Supp. of Mot. for Summ. J. ("MCL's Mem."), Doc. Entry No. 82.)

For reasons this court simply cannot discern, Plaintiff's counsel has utterly failed to contest, much less even acknowledge, a substantial majority of Responding Defendants' legal arguments. In particular, Plaintiff's memorandum in support of its cross-motion and in opposition to Responding Defendants' motions simply ignores Responding Defendants' preemption and privity arguments and does not otherwise seriously respond to the additional legal arguments made by Responding Defendants in their motion papers.  (*See* Pl.'s Mem. of Law ("Pl.'s Mem."), Doc. Entry No. 80.)  Instead, Plaintiff's memorandum, in small part, attempts to indirectly raise a Carmack claim, which it never alleged in its complaint.  In addition, Plaintiff focuses the majority of its cross-motion on an entirely new theory of liability not alleged in the complaint.  Specifically, Plaintiff now argues Responding Defendants engaged in a conspiracy with Devan Patel to defraud Plaintiff of its property.  (*See* Pl.'s Mem. at 7-15.) Moreover, Plaintiff now seeks to hold Responding Defendants jointly and severally liable for the purported conspiracy.  (Pl.'s Mem. at 11.)

Plaintiff did not allege a Carmack claim, a fraud claim, or a conspiracy to commit fraud claim against Responding Defendants anywhere in its complaint.  (*See* Compl.)  Plaintiff's attempt to raise these claims for the first time in its memorandum of law is improper, as it is well settled "that a party cannot assert a claim for the first time in its motion papers."  *Global Crossing Bandwidth, Inc. v. Locus Telecommunication, Inc.*, 632 F. Supp. 2d 224, 245 (W.D.N.Y. 2009) (collecting cases); *accord Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 796 (S.D.N.Y. 2011); *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3193709, at *5 n. 3 (E.D.N.Y. Nov. 2, 2006).

Plaintiff has had multiple opportunities to amend its complaint, and, after completion of discovery, if Plaintiff concluded that it wanted to bring additional claims against Responding Defendants, Plaintiff was obligated to comply with Federal Rule of Civil Procedure 15(a)(2) and seek leave of the court to amend its complaint further.  "A summary judgment opposition brief is not a substitute for a timely motion to amend the complaint."  *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003).  Accordingly, the court will not consider Plaintiff's newly raised theories of liability.  *See Chairnoff v. National Westminster Bank, N.A.*, 309 F. Supp. 2d 581, 586 (S.D.N.Y. 2004) ("Plaintiffs' complaint makes no mention of this theory . . . and Plaintiffs' failure to raise this issue previously, even on a generous reading of their submissions, is grounds alone to reject their argument.").

Plaintiff has failed to alert the court as to what state law its claims are apparently premised upon.  Assuming that Plaintiff's claims are premised on New York law, its conspiracy to commit fraud claim, even if timely raised, is not cognizable.  *See Thyroff v. Nationwide Mut. Ins. Co.*, 57 A.D. 3d 1433, 1435 (4th Dep't 2008) ("New York does not recognize civil conspiracy to commit a tort as an independent cause of action." (quoting *Sokol v. Addison*, 293

A.D. 2d 600, 601 (2d Dep't 2002)); *see also Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *23-24 (E.D.N.Y. Apr. 18, 2012) (collecting cases). Based upon the foregoing, Plaintiff's belatedly raised conspiracy to commit fraud claims are denied as untimely and as not cognizable under New York law.

### III. Inter's Summary Judgment Motion

Inter contends that each of Plaintiff's state or common law breach of contract claims are premised on and arise out of Inter's alleged failure to properly ship goods in interstate commerce. (Inter's Mem. at 2.) As such, Inter asserts all of Plaintiff's claims are preempted and exclusively governed by the Carmack Amendment. (*Id.* at 7.) As noted *supra*, Part II, Plaintiff neither raises a Carmack claim in its complaint nor addresses Inter's preemption argument in its moving papers. (*See* Pl.'s Mem.) However, Plaintiff seems to concede that the Carmack Amendment is the proper vehicle by which it should have asserted liability against Inter, when, in its summary judgment motion papers, it attempts to raise what appears to be a Carmack claim for the first time. (*See* Pl.'s Mem. at 9-11.) The court concludes that Plaintiff's claims against Inter, as currently pled, are preempted by the Carmack Amendment. Accordingly, summary judgment is granted in Inter's favor.

The Carmack Amendment,[9] which Congress passed in 1906, "addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the *actual loss* or injury to their property caused

---

[9] The Carmack Amendment, 49 U.S.C. § 14706(a)(1) states in pertinent part: A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, [or] (B) the delivering carrier . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

by any of the carriers involved in the shipment." *Cleveland v. Beltman N. Am. Co.*, 30 F. 3d 373, 377 (2d Cir. 1994) (emphasis in original). The Supreme Court has interpreted the Carmack Amendment to broadly preempt state law claims arising from the shipment of goods in interstate commerce. *See, e.g., Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913) ("[The Carmack Amendment] embraces the subject of the liability of the carrier under a bill of lading . . . . Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."); *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916) ("[T]he words of the [Carmack Amendment] are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation. . . .").

In addition, "the Second Circuit has concluded that the statutory scheme provided by the Carmack Amendment is the exclusive remedy whereby a shipper may seek reimbursement from a carrier for damage to his or her property that occurred during shipment." *Commercial Union Ins. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999) (citing *Cleveland*, 30 F. 3d at 380-81); *accord Diamond v. Beltman N. Am. Van Lines*, 29 F. App'x 49, 50 (2d Cir. 2002) ("The Carmack Amendment to the Interstate Commerce Act is the exclusive remedy a shipper may use to recover damages from a carrier for damage to property during shipment."); *Design X Mfg., Inc. v. ABF Freight Systems, Inc.*, 584 F. Supp. 2d 464, 467 (D.Conn. 2008) (collecting cases) ("It is well established that the Carmack Amendment preempts state law claims arising from the shipment of goods in interstate commerce.").

Here, Plaintiff alleges in the complaint, and the evidence in the record demonstrates, that the subject rice shipments were shipped by Inter in interstate commerce. Because Plaintiff seeks

19

reimbursement from Inter, a motor carrier, for goods lost or damaged during interstate shipment, the Carmack Amendment is the exclusive means by which Plaintiff can recover against Inter. *See Commercial Union Ins. Co.*, 50 F. Supp. 2d at 257.   Plaintiff only alleges common law breach of contract claims against Inter.   Accordingly, grants summary judgment is granted in Inter's favor, as all of Plaintiff's breach of contract claims are preempted by the Carmack Amendment.   *See Mafcote Industries, Inc. v. Milan Exp. Co., Inc.*, 2011 WL 3924188, at *9 (D.Conn. Sept. 7, 2011) (Because the shipments at issue were interstate shipments, "the Carmack Amendment preempts Plaintiffs' state law claims and Defendant is accordingly entitled to summary judgment in its favor[.]"); *Design X Mfg., Inc.*, 584 F. Supp. 2d at 468 (granting summary judgment in favor of defendant with respect to plaintiff's common law negligence and breach of contract claims because they are preempted by the Carmack Amendment).

## IV.    MCL's Summary Judgment Motion

As summary judgment is granted in Inter's favor against Plaintiff, Inter's cross-claims against MCL are now moot.   Accordingly, only Plaintiff's breach of contract claims against MCL remain outstanding.   As such, the court need not reach the issue of whether Section 14501(c)(1) of the ICCTA preempts all state law claims, other than breach of contract claims, which the Second Circuit has not yet addressed, in order to dispose of this motion.   Thus, the narrow question remaining before this court is whether MCL is liable to Plaintiff for breaching the bills of lading.

MCL contends, *inter alia*, that it was never in privity of contract with Plaintiff and, thus, the complaint should be dismissed as to it.   (MCL's Mem. at 12, 14-17.)   Plaintiff fails to contest, let alone address, the issue of privity in its moving papers, but instead focuses its arguments on its untimely and improperly asserted conspiracy to commit fraud claim. (*See, e.g.*,

Pl.'s Mem. at 8-9.)  The record shows that MCL was never in privity of contract with Plaintiff. Accordingly, summary judgment is granted in favor of MCL as to Plaintiff's breach of contract claims.

As an initial matter, the bills of lading that form the basis of Plaintiff's breach of contract claims do not contain choice of law provisions.  (*See* Ex. B, Annexed to Arora Aff.)  However, there does not appear to be a choice of law issue here because Responding Defendants discuss New York law in their briefs and Plaintiff does not contest Responding Defendants' reliance on New York law.  (*See* MCL's Mem. at 16-17; Mem. of Law in Further Supp. of  Inter's Mot. for Summ. J. and in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Inter's Reply Mem.") at 8, Doc. Entry No. 94; Pl.'s Mem.)  Thus, the court will proceed under the assumption that New York law applies to the contracts.

Under New York law, there are four elements necessary to establish a breach of contract claim: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure to perform on the part of defendant; and (4) damages.  *See Johnson v. Nextel Commc'ns, Inc.,* 660 F. 3d 131, 142 (2d Cir. 2011) (citations omitted).  In order for a contract to be binding "there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Express Indus. and Terminal Corp. v. N.Y. State Dep't. of Transp.*, 93 N.Y.2d 584, 589 (1999).  As such, courts generally "look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract."  *Id.*

Here, the record shows Plaintiff and MCL did not enter into binding contract with each other regarding the subject rice shipments.  Plaintiff did not hire or pay MCL to arrange for transportation of the rice and MCL did not bill Plaintiff for its broker services.  (Defs.' 56.1

21

Stmt. ¶ 55, 56; Pl.'s 56.1(b) Stmt. ¶ 55; Arora Dep. at 139-140, 160-61.)  Plaintiff played no role

in arranging for the transportation of the subject shipments and Plaintiff's principal, Arora,

testified that "it never occurred in my mind" to think about the role MCL played in the shipment

arrangements.  (Defs.' 56.1 Stmt. ¶¶ 21, 63; Pl.'s 56.1(b) Stmt. ¶ 21; Arora Dep. at 136, 162.)

Plaintiff believed that MCL was hired by Whole Foods and Trader Joe's and that MCL was

making the shipping arrangement on behalf of Whole Foods and Trader Joe's.  (Defs.' 56.1 Stmt.

¶¶ 18, 20; Pl.'s 56.1(b) Stmt. ¶¶ 18, 20; Arora Dep. at 48-49, 72-73, 136-37.)  To the contrary,

MCL was actually hired, instructed and paid by Patel.  (Defs.' 56.1 Stmt. ¶ 57; Pl.'s 56.1(b)

Stmt. ¶ 57.)  The uncontroverted record shows that:  1) the bills of lading do not name MCL; 2)

only representatives from Inter signed the bills of lading; 3) MCL never sent Plaintiff any

documents relating to the shipments; and 4) Plaintiff did not transmit any documents, including

the bills of lading, to MCL.  (Defs.' 56.1 Stmt. ¶ 54, 58; Pl.'s 56.1(b) Stmt. ¶ 54, 58; Arora Dep.

at 89-90, 160; Ex. B, Annexed to Arora Aff.)  Instead, Plaintiff sent copies of the bills of lading

to Smith in Austin, Texas.  (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1(b) Stmt. ¶ 28; Arora Dep. at 90-

92.)  Finally, MCL, acting as a broker, never transported or maintained physical possession of

any of the rice shipments.  (Defs.' 56.1 Stmt. ¶ 47; Pl.'s 56.1(b) Stmt. ¶ 47.)  Based on this

undisputed evidence, the court concludes no agreement was ever made between MCL and

Plaintiff.  Hence, no contract was formed between these parties and MCL cannot be found liable

for breach of contract.  *See Gessin Elec. Contractors, Inc. v. 95 Wall Associates, LLC*, 74 A.D.

3d 516, 518 (1st Dep't 2010) (no contract exists where there was no meeting of the minds

between the parties).  Accordingly, MCL's summary judgment motion is granted as to Plaintiff's

breach of contract claims.

  To the extent Plaintiff attempts to assert MCL owed it a separate legal duty that MCL

allegedly breached, MCL argues that, as a property broker, its sole duty is to act in good faith towards its principal, in this case Devan Patel, and its liability to its principal is limited to selecting a qualified carrier to transport the principal's freight.  (*See* MCL's Mem. at 11, 16); *cf.* *Tartaglione v. Shaw's Exp., Inc.*, 790 F. Supp. 438, 441 (S.D.N.Y. 1992) (property broker's duty was to arrange for transportation of property by an authorized motor carrier).  The court need not address the possibility that the law might have permitted Plaintiff to recover against MCL under some other theory of liability, because the only theory of liability Plaintiff alleged against MCL in its complaint is for breach of contract.

**V.    Plaintiff's Summary Judgment Motion**

For the reasons discussed *supra* in Parts II, III, and IV of this Opinion and Order, Plaintiff's cross-motion for summary judgment is denied in its entirety.

**CONCLUSION**

For the reasons set forth above: 1) Inter's motion for summary judgment is granted in its entirety; 2) MCL's motion for summary judgment as to Plaintiff's breach of contract claims is granted; 3) MCL's motion for summary judgment as to Inter's cross-claims is denied as moot; and 4) Plaintiff's cross-motion for summary judgment is denied in its entirety.  The complaint is dismissed as to Responding Defendants, and, therefore, the Responding Defendants' requests for notions of default as to Neil and Devan Patel (Doc. Entry Nos. 67, 71, 78) are denied as moot and the Clerk's entry of notation of defaults are vacated.  (Doc. Entry Nos. 70, 74, 78.)  As the only claim made by Plaintiff against the remaining, non-appearing defendant, Devan Patel, appears to be a conspiracy to commit fraud, which as discussed in Part II, *supra*, is not a cognizable claim under New York law, the remaining claim in the complaint, cause of action

seventeen, is also dismissed.  Thusly, Plaintiff's motion for entry of default is denied as moot (Doc. Entry No. 71) and the Clerk's entry of notation of default is vacated.  (Doc. Entry No. 74.)

The entire complaint is dismissed and the Clerk of the Court is directed to close this case.


SO ORDERED.

Dated:  Brooklyn, New York
        August 10, 2012

_____/s/_____
        DORA L. IRIZARRY
     United States District Judge

24